STATE OF MAINE                                      SUPERIOR COURT
                                                       CIVIL ACTION
YORK, ss.                                       DOCKET NO. CV-03-071

RORY HOLLAND,

              Plaintiff

       v.                              ORDER

CITY OF BIDDEFORD,

              Defendant

       This case comes before this Court on Plaintiff Rory Holland's Motion to Strike,

and on Defendant City of Biddeford's Motion for Summary Judgment on the merits of

the motion and by default.

                              **FACTS**

       On February 5, 2003, police were called to 56 South Street, Biddeford, Maine,

when a tenant of Plaintiff Rory Holland (Plaintiff), complained the building had no

power, no water and no heat. Police officers responding for the Defendant City of

Biddeford (the City) found no working utilities in the building and began seeking

alternative housing for tenants in both of two apartments. Over the next five and one

half hours, a number of events occurred. The City's Code Enforcement Officer (CEO)

declared the premises to be uninhabitable because the utilities were not working, and

posted notices condemning the premises. The CEO also noticed a strong odor of fuel oil

in the first floor apartment, and had City police officers call the City Fire Department to

investigate. Because the odor seemed to come from a locked basement under the

apartment, fire officials broke a basement window to gain entry into the basement.

There, they discovered spilled fuel oil on the dirt floor, open canisters of fuel, and fuel

burners that were damaged and disconnected. They also saw that circuit breakers had been removed from an electric fuse box. Officials decided the conditions in the basement posed a fire hazard, particularly if power was restored, and they contacted Central Maine Power to disconnect service to the building. City Public Works were called to remove a refrigerator with its door and hinges still in place, lying in the driveway. Throughout the evening, City officials tried unsuccessfully to contact the Plaintiff, who is the owner and landlord of 56 South Street. Eventually, an attorney appeared and reminded City officials that Plaintiff wished to be contacted only through an attorney.

Based on their discoveries on February 5, 2003, the City CEO obtained an administrative warrant to search 56 South Street for code violations. On February 12, 2003, the warrant was executed by the City's Chief CEO, the Life and Safety CEO, the Deputy Fire Chief, the State Chief Trade Inspector and a State Electrical Inspector, plus two City police officers. Following the inspection, Plaintiff was ordered to correct a number of violations, mostly electrical, no later than March 14, 2003.

Plaintiff appealed the order to the City Zoning Board, and a hearing was scheduled for April 9, 2003. On March 18, 2003, Plaintiff, who is African American, filed this Complaint against the City, claiming trespass, damage, assault, battery, kidnapping, infliction of emotional distress, interference with use of his property, racially motivated harassment, and violations of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff also requested a temporary restraining order against the City, which was denied.

On March 19, 2003, the City issued a temporary occupancy permit for 56 South Street, after an electrician hired by Plaintiff completed repairs. The permit stipulated that Plaintiff must install a house meter for electricity in common areas and restore

2

proper egress to the building within ninety days, or the temporary permit would expire by its own terms. In August 2003, Plaintiff rented an apartment at 56 South Street after the expiration of the temporary occupancy permit. The City brought suit, and Plaintiff was found in violation by this Court. (*Biddeford v. Holland*, CV-03-224).

On January 6, 2004, the City filed a Motion for Summary Judgment on all Plaintiff's claims in this case. Plaintiff requested an enlargement of time to respond in order to depose Donald Simard, a former City CEO, and Linda Boudle, the tenant who had originally called police to 56 South Street on February 5, 2003. The City objected to the enlargement of time, arguing Plaintiff had no excuse for failing to depose Simard and Boudle before the discovery deadline.[1] On May 11, 2004, the City moved for a default judgment in its favor on its Motion for Summary Judgment.

On August 30, 2004, Plaintiff again requested an enlargement of time in order to give Plaintiff's new counsel time to review the case, including materials the transcript of Donald Simard's testimony in the *Biddeford v. Holland* case.[2] The City filed a limited objection, requesting that the Court preclude Plaintiff from objecting to the City's Statement of Material Facts. This Court granted Plaintiff's request for an enlargement of time, but held that the City's objections and request for a default judgment would be considered in conjunction with the merits of the City's Motion for Summary Judgment.

On September 20, 2004, Plaintiff filed his opposition to the City's Motion for Summary Judgment, abandoning his State tort and takings claims, but retaining his claims under the Fourth Amendment, and Due Process and Equal Protection clauses

---

[1]    On March 4, 2004, Plaintiff was permitted to depose Simard in connection with the related case, CV-03-224.

[2]    The last day of trial in this case was June 21, 2004.

pursuant to 42 U.S.C. § 1983. At the same time, Plaintiff filed a Motion to Strike twenty-two of the City's thirty Statements of Material Fact.

## I. Plaintiff's Motion to Strike.

Under Maine Rules, affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." M.R. Civ. P. 56(e). Each party's statement of material fact "must contain specific record references which 'refer to evidence of a quality that could be admissible at trial.'" *Doyle v. Dep't of Human Serv.*, 2003 ME 61, ¶ 12, 824 A.2d 48, 53 (citation omitted).

Similarly, a party opposing a motion for summary judgment must "admit, deny or qualify the [moving party's] facts . . . and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule." M.R.Civ.P. 56(h)(2). Thus where the nonmoving party "failed to support her denials and qualifications with record citations relevant to the proposition for which they were cited," the moving party's statement of facts were treated as admitted. *Doyle* ¶ 10, 824 A.2d at 52-53. Because Rule 56 "imposes on the opponent of the motion a further obligation to come forward with affidavits or other materials setting forth competent proof of specific facts that would be admissible in evidence… ." mere denial is not enough. *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992).

Here Plaintiff seeks to strike twenty-two of the City's thirty statements of material fact, arguing they are not supported by record references, are not admissible as evidence, or are not properly authenticated.[3] However, Plaintiff's motion to strike in all

---

[3]    These are Defendant's statements at numbers 3, 5, 6, 7, 8, 9, 10, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 30.

4

twenty-two instances must fail. In all but one instance, Plaintiff provides no record citations to affidavits or other material controverting the allegedly defective statements, as required under the Rule 56(h)(2). In the single case where Plaintiff controverts a fact by citation to affidavits, he gives the Court no direction to a paragraph or page number. "An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of the identified record material supporting the assertion. . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced.... ." M.R. Civ. P. 56(h)(4).

Finally, the Plaintiff incorrectly assumes that the City's record citations are to evidence not properly before the Court on summary judgment. Summary judgment motions may be supported by affidavits, but also by other under-oath statements, as well as by documents that would have evidentiary significance in a trial. Donald G. Alexander, State and Federal Summary Judgment Practice *in* THE MAINE RULES OF CIVIL PROCEDURE WITH ADVISORY NOTES AND COMMENTARY (July 2004 ed.)

Because Plaintiff has not properly controverted those statements of fact he seeks to strike, Plaintiff's Motion to Strike is denied. Furthermore, because all but two of the City's twenty-two contested facts are properly supported by record citations, those facts are deemed admitted. M.R. Civ. P. 56 (h)(4); *Pratt v. Ottum*, 2000 ME ¶ 15 n.8, 761 A.2d 313, 318. However, the City's statements characterizing Plaintiff as turning off the utilities at 56 South Street in retaliation, or as engaging in "self-help,"(Defendant's statements #5 and #6) are not supported by the cited record references, and are not deemed admitted.

5

## II. Defendant's Motion for Summary Judgment.

"To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." *Doyle v. Dep't of Human Services,* 2003 ME 61, ¶ 9, 824 A.2d 48, 53 (citation omitted). If plaintiff presents insufficient evidence on an essential element, such that 'the defendant would . . . be entitled to judgment as a matter of law on that state of the evidence at trial, the defendant is entitled to summary judgment." *Id.*

Plaintiff is bringing claims under 42 U.S.C. § 1983, for alleged violations of his Fourth Amendment protections against unreasonable search and seizure, and his right, under the Fourteenth Amendment, to due process and to equal protection of the law. Under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983 (2004).

A municipality, rather than individual officials, can be held liable under § 1983 if the plaintiff can show the municipality "maintained a policy or custom which caused, or was the moving force behind, a deprivation of constitutional rights." *Grendell v. Gillway,* 974 F. Supp. 46, 53 (D. Me. 1997)(citation omitted). "If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.* (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481

6

(1986)). *See also, Small v. Inhabitants of Belfast,* 796 F.2d 544, 552-53 (1st Cir. 1986)(adopting the "final authority" test to establish attribution of officials' acts to a municipality for purposes of liability).

A plaintiff may maintain a § 1983 claim only if he can also establish that municipal officers violated constitutional rights "so clearly established that reasonable defendants would have known that their specific actions transgressed those rights, and thus, were not entitled to qualified immunity." *Lyons v. City of Lewiston,* 666 A.2d 95, 99 (Me. 1995).

Plaintiff argues that the City's posting of his property, forcible entry into the basement without his consent, and interference with his efforts to repair, enter, or rent the property were unlawful, and were part of a history of harassment and racial based discrimination against Plaintiff by City officials, including by code enforcement officers and police, in violation of his rights.

The City argues that the past conduct of City officials toward the Plaintiff is irrelevant to its valid actions on and after February 5, 2003, and that Plaintiff has not established a prima facie case for his equal protection or substantive due process claims regarding those actions. The City also argues that Plaintiff's Fourth Amendment claim must fail when entry into the basement at 56 South Street was a valid exercise of City officers' community caretaking function.

### a. Plaintiff's Fourth Amendment Claim

The United State Supreme Court has held that "there is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime . . . Searches for administrative purposes,

like searches for evidence of crime, are encompassed by the Fourth Amendment." *Michigan v. Tyler*, 436 U.S. 499, 506 (1978).

However, a warrantless search may be constitutionally permissible when it is reasonably undertaken as part of an officer's "community caretaking functions," and is not a "pretext concealing an investigatory police motive." *S. Dakota v. Opperman*, 428 U.S. 364, 368-76 (1975). Community caretaking functions are those actions related to "maintaining and fostering public safety ... totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). The Law Court acknowledged that "specific and articulable facts" justifying a warrantless search arise in the context of a police officer's "legitimate role as a public servant to assist those in distress and to maintain and foster public safety." *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989). Thus, the Law Court held a police officer was acting permissibly within his community caretaking function when he entered an apartment without a warrant to investigate water and sewage leaking into the apartment below. *State v. Dube*, 655 A.2d 338, 340 (Me. 1995).

A warrantless search must also be reasonable, that is, "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Michael M.*, 2001 ME 92, ¶ 6 n.4, 772 A.2d 1179, 1182 (citation omitted); *State v. Storey*, 1998 ME 161, ¶ 12, 713 A.2d 331, 334 (citation omitted). The State bears the burden of proving the reasonableness of a warrantless entry and search. *State v. Trusiani*, 2004 ME 107, ¶ 11 n.2, 854 A.2d 860, 864.

Here, it is undisputed that City officials first entered 56 South Street with the consent of its occupants to respond to conditions that were quickly found to make the

8

### b. Plaintiff's Due Process Claim

The Fourteenth Amendment provides that "no state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The Due Process Clause thus forbids "deprivations of life, liberty or property without 'fundamental fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." *State v. McConkie,* 2000 ME ¶ 9, 755 A.2d 1075, 1078 (citations omitted). To succeed in a due process claim, the plaintiff must show that he was deprived of a protectible property interest by "'means that were pretextual, arbitrary and capricious, and . . . without any rational basis.'" *Kittery Retail Ventures, LLC v. Town of Kittery,* 2004 ME 65, ¶ 32, 856 A.2d 1183, 1193. (citation omitted).

Substantive due process protections are characterized as "imposing limits on what a state may do regardless of what procedural protection is provided." *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir 1991 ). A plaintiff must establish either that the defendant's actions were sufficient to "shock the conscience," (quoting Rochin v. California, 342 U.S. 165, 172 (1952)), or were "a violation of an identified liberty or property interest protected by the due process clause." *Id.*[4] *See, e.g., Grendell v. Gillway,* 974 F. Supp. 46 (D. Me. 1997) (finding an officer's threatening and lying to a fifth grade student to force her to incriminate her parents "shocked the conscience"). *See also, Evans v. Avery,* 100 F.3d 1033, 1038 (1st Cir. 1996)(deliberate indifference to a victim's rights by engaging in a high speed chase, standing alone, does not "shock the conscience"); *Brown v. Hot, Sexy*

---

[4]    Under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. *See, e.g., Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, (1983) (state must provide medical care to persons with serious medical needs while in state custody); *Ingraham v. Wright,* 430 U.S. 651, 673 (1977) (corporal punishment of a student inflicted by a public school teacher violates substantive due process); *Landrigan v. Warwick,* 628 F.2d 736, 741-42 (1st Cir. 1980) (substantive due process implicated where a policeman uses excessive force in the apprehension of a suspect).

10

*and Safer Productions, Inc.,* 68 F.3d 525, 532 (1sr Cir. 1995)(finding a high threshold for establishing that words or verbal harassment, without physical contact,"shocks the conscience"); *Germany v. Vance,* 868 F.2d 9 (1st Cir. 1989)(reckless or callous indifference, rather than gross negligence, required to maintain a substantive due process claim); *Licari v. Ferruzzi,* 22 F.3d 344, 349 (1st Cir. 1991)( due process claim may lie when official actions reflect a "hostility and animus" arising out of the plaintiff's political affiliation, beliefs or an immutable characteristic, including race).

Here, it is undisputed that Plaintiff has a protected property interest in the use and rental of apartments in his building at 56 South Street, as well as his own physical safety. Plaintiff's evidence, viewed in a light most favorable to the Plaintiff, suggests that conduct of City decision-makers during and following the posting of Plaintiff's property on February 5, 2003, could have been part of a series of actions and inactions by City code enforcement officers and police reflecting an animus against the Plaintiff based on Plaintiff's race. On summary judgment, the City does not controvert Plaintiff's account of City actions or failures to act. Nor has the City provided evidence in the record on summary judgment to support a qualified immunity defense.

The Plaintiff alleges that City officers repeatedly failed to protect him from hate crimes and racially motivated violence, sought to prevent him from obtaining rental housing, entered his residence without warrants, failed to enforce a protection from harassment order he obtained, brought dozens of unsupported charges against him that were later dismissed, including a charge of kidnapping, brought an armed SWAT team into his bedroom to arrest him on unsupported charges, tried to dissuade tenants from renting his apartments, and tried to persuade CEOs to cite him for unsupported violations in an effort to drive him from the area.

11

Viewed in a light most favorable to Plaintiff, Plaintiff's evidence creates a factual dispute that City actions on or following February 5, 2003 could be part of a pattern of harassment and deliberate indifference toward Plaintiff that "shocks the conscience," and could be attributable to the City for purposes of liability. Plaintiff has therefore met his burden of establishing the elements of a prima facie due process claim pursuant to 42 U.S.C. § 1983, precluding summary judgment for the City.

### c. Plaintiff's Equal Protection Claim

The Fourteenth Amendment's requirement that no State shall deny to any person within its jurisdiction the equal protection of the laws "is essentially a direction that all persons similarly situated should be treated alike." *B & B Coastal Enter. v. Demers*, 276 F. Supp. 2d 155, 171 (D. Me. 2003) (citing *City of Cleburne v. Cleburne Living* Ctr., Inc., 473 U.S. 432, 439 (1985)). Equal protection assures individuals not only that intentional and arbitrary discrimination is not promoted by statute, but also that it is not promoted by "improper execution through duly constituted agents." *Id.* (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 238 F. Supp. 2d 395, 416 (D.P.R. 2002)). Thus, the Equal Protection Clause prohibits enforcement of municipal laws based upon any unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* (citing *United States v. Batchelder*, 442 U.S. 114, 125, n.9, (1979)).

To establish liability, a plaintiff must offer "proof that (1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph*, 932 F.2d 89, 92 (1st Cir. 1991). Where there is no evidence of racial, religious, or speech discrimination, "there must be evidence from which a jury

12

reasonably could find that the [defendant] acted with malicious or bad faith intent to injure [the plaintiff]." *Id.* However, Plainittf seeking to prove malicious intent rising to the level of a constitutional violation, bear an "onerous burden." *Wal-Mart,* 238 F. Supp. 2d at 417.

Here Plaintiff claims the City unlawfully discriminated against him when City decision-makers selectively enforced or failed to enforce laws, including those pertaining to Plaintiff's rental property at 56 South Street, as part of a policy of discrimination that is based on Plaintiff's race.[5] The Plaintiff provides evidence of conduct beginning in 1994, in which he alleges that the City repeatedly failed to protect him from hate crimes and racially motivated violence, sought to prevent him from obtaining rental housing, entered his residence without warrants, failed to enforce a protection from harassment order he obtained, brought dozens of unsupported charges that were later dismissed, including a charge of kidnapping, brought an armed SWAT team into his house and bedroom to arrest him on trumped-up charges, and tried to dissuade tenants from renting from Plaintiff's apartments.

Although Plaintiff presents little evidence that "similarly situated citizens" were treated differently, this Court can reasonably conclude that some of the conduct Plaintiff alleges is unlikely to be part of the City's routine law or code enforcement practices. (Plaintiff's statement of fact ## 57, 66). Plaintiff's evidence that the City was motivated by racial, rather than some other form of animus toward Plaintiff, is likewise sparse, consisting of his own affidavit and the testimony of former City CEO, Donald

---

[5]    Although the incidents complained of by the Plaintiff may be offered as evidence, some can no longer be included in a § 1983 claim. The U.S. Supreme Court has held that § 1983 claims brought in State courts must be brought within the residual or general statute of limitations period for personal injury actions in that State. *Owens v. Okure,* 488 U.S. 235 (1989). Under Maine law, this period was held to be six years following the cause of action under 14 M.R.S.A. § 752 (2004). *Small v. City of Belfast,* 796 F.2d 544 (1st Cir. 1986).

13

Simard. The City provides no evidence on summary judgment to controvert Plaintiff's evidence, arguing only that evidence of the City's past conduct toward the Plaintiff is not relevant to the City's actions on or following February 5, 2003.

Because Plaintiff's evidence, viewed in a light most favorable to him, suggests that Plaintiff was treated by City officials in a discriminatory manner on the basis of his race, and that this treatment was part of a policy attributable to the City, Plaintiff has met his burden of establishing a prima facie equal protection claim pursuant to 42 U.S.C. § 1983, precluding summary judgment for the City.

The entries will be as follows:

Plaintiff Rory Holland's Motion to Strike is Denied.

Defendant City of Biddeford's Motion for Summary Judgment on Plaintiff Rory Holland's Fourth Amendment Claim pursuant to 42 U.S.C. § 1983 is Granted.

Defendant City of Biddeford's Motion for Summary Judgment on Plaintiff Rory Holland's Due Process claim and Equal Protection claim pursuant to 42 U.S.C. § 1983 is Denied.

Dated:        March 21, 2005

Stephen C. Whiting, Esq. - PL
Michael E. Saucier, Esq. and
Aaron BUrns, Esq. - DEF

G. Arthur Brennan
Justice, Superior Court

14

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-071
YUR- 'A B- 9/16/06

RORY HOLLAND,

      Plaintiff

    v.

      **JUDGMENT**

CITY OF BIDDEFORD,

      Defendant

The original complaint in this case asserted a variety of State tort claims and Federal constitutional claims against the City of Biddeford (City). At the summary judgment phase, Mr. Holland withdrew the State tort claims and this court granted summary judgment for the City on the Fourth Amendment claim, but denied summary judgment on Mr. Holland's Equal Protection and Due Process claims. These claims were heard at a non-jury trial over six days between April 18th and June 7th, 2006.

Mr. Holland alleges approximately fifty-two interactions with City authorities which demonstrate racial animus on the part of the City toward Mr. Holland. At a pre-trial conference the court asked Mr. Holland's counsel to select the most significant events in an attempt to reasonably limit the scope of testimony at trial. Counsel accommodated this request and agreed to focus on fifteen events at trial. However, testimony concerning other events was offered and admitted over objection as it might bear on the issue of racial animus.

Following trial, final arguments and review of post-trial pleadings, judgment will enter for the City on all claims. In summary, while Mr. Holland has established

that an animus developed between him and City authorities, he has failed to prove it was motivated by racial considerations.

## ELEMENTS OF THE CLAIM

Mr. Holland alleges violations of his Due Process and Equal Protection rights, actionable under the Federal Civil Rights Act. To establish liability on the part of the City, Mr. Holland must prove the existence of an official policy or custom which caused a deprivation of his rights. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Such a custom or policy can be inferred when the evidence demonstrates that the offending conduct was so widespread and flagrant that it can fairly be said that municipal officials should be aware of it. *Silva v. Worden*, 130 F.3d 26 (1st Cir. 1997). To succeed on his Equal Protection claim Mr. Holland must prove that he was treated selectively as compared to others based on his race. To succeed on his Due Process claim, Mr. Holland must prove that officials, motivated by considerations of race, acted against him in a manner which shocks the conscience.

## FACTS

Mr. Holland is an African-American who moved to Biddeford in 1994, renting an apartment at 58 South Street. In June, 1997, he bought the apartment buildings at 56 and 58 South Street. On February 5, 2003 Biddeford authorities were called by a tenant from Mr. Holland's apartment at 56 South Street, who complained that all utilities had been shut off. This complaint led to a search of the basement to determine the source of a fuel oil odor and ultimately led to an order prohibiting occupancy until a variety of electrical code issues were resolved. This event, which is described in more detail in the Order of Summary Judgment in favor of the City dated March 21, 2005, appears to have been the primary event which triggered these claims.

Mr. Holland alleges that the City, acting principally through the police department and the code enforcement officer, and with the knowing acquiescence – if not the outright encouragement – of the City's elected and appointed leadership, violated his constitutional rights to Equal Protection and Due Process. Testimony was presented concerning approximately fifty instances to establish these claims. The thrust of the claims involving the police department allege either that the police commenced criminal complaints against him without probable cause or that they failed to respond appropriately to his calls for service. The claims against the Code Enforcement Officer allege that his property was singled out for discriminatory enforcement actions. Mr. Holland alleges that these actions were motivated by racial animus toward him: in essence, the City wanted him to move out of town.

My ultimate finding is that, while the relationship between Mr. Holland and the City has been difficult and often contentious, the evidence does not support a finding that the City acted with racial animus toward Mr. Holland. This finding is based upon an analysis of the nature of the contacts between Mr. Holland and the City, the actions and decisions taken by City employees and the information available to them when they acted.

With respect to police contacts, between October 1995 and April 2004 there were approximately seventeen occasions on which the police considered taking some enforcement action against Mr. Holland. My review of the police records indicates that on each occasion the police were responding to a citizen complaint concerning Mr. Holland's conduct. On six occasions he was arrested. On four of those six occasions the police had procured judicially approved warrants. One of the other arrests involved a confrontation between Mr. Holland and Coco Bedard. This incident arose out of a business disagreement between the parties. It escalated into a physical confrontation,

3

followed by reckless driving behavior. Mr. Holland complains that he was arrested, while his complaints against Mr. Bedard were ignored. In fact, the police report shows both parties were arrested and charged.

The other warrantless arrest involved an incident at the Biddeford District Court. A citizen called, complaining that Mr. Holland was intimidating her. Apparently, she was a potential witness in a case involving Mr. Holland. When the police responded, the complaintant was crying and expressed fear of Mr. Holland. Police consulted with the clerk's office to ascertain if Mr. Holland had any scheduled business at court and learned that he did not. They then consulted with court security and decided to ask Mr. Holland to leave on several occasions. When he refused, he was arrested. While Mr. Holland certainly has a right of access to public facilities, that right is not absolute. A person who is disrupting or interfering with public business may be asked to leave, and becomes a trespasser if he fails to do so. A fair evaluation of the evidence on this point shows that police had probable cause to arrest Mr. Holland. The fact that the charge was not prosecuted does not change this conclusion. In any event, nothing in the evidence suggests that the arrest was motivated by racial animus.

With respect to several incidents, Mr. Holland alleges that the police summonsed him, but failed to act on his complaints against others arising out of the same incident. The police reports do not support these contentions. When the police responded to incidents which presented conflicting reports, frequently they summonsed both parties. (see, for example, Incident #5 at Shelley's Pub; Incident #8; Incident #9 involving Mr. Lau).

Mr. Holland alleges that he was the victim of hate crimes perpetrated by Robert Kalex and others and the police failed to adequately respond. The evidence is to the contrary. The Biddeford Police have a specific policy concerning hate crimes. Ms.

4

Berkovich, a detective with the Attorney General's office who investigates reports of hate crimes, testified that the Biddeford department is fully cooperative with the Attorney General's policy concerning hate crimes.

She testified that Biddeford is one of the better agencies she works with; fully responsive to her requests for information or assistance. Mr. Holland's complaints were promptly referred to the Attorney General's office, and his case received special treatment. Mr. Kalex was prosecuted on these claims. While Mr. Holland may not be satisfied with the promptness of the investigation or the final outcome of the prosecution, the evidence does not show that the police ignored his complaint.

One final example of an incident in which Mr. Holland asserts that the police acted out of racial animus toward him involves Susan Varney. In June 2004 Mr. Holland began staying at the home of Susan Varney, a recent widow. The facts show that relatives of Ms. Varney came to the Saco Police expressing concern for Ms. Varney. The Saco Police requested that the Biddeford Police check on Ms. Varney's welfare. When they arrived, the Biddeford Police met a citizen, who also expressed concern for Ms. Varney. The police next met with Ms. Varney's brother, who lived in the same house. The brother was unable to reach Ms. Varney by phone or otherwise. After consulting with the District Attorney, the police accompanied the brother into Ms. Varney's apartment. After having an opportunity to speak with Ms. Varney, they accepted her statement that she was not in danger and left. No action was taken against Mr. Holland. The allegation that this police action is motivated by racial animus toward Mr. Holland is not supported by the evidence; indeed, anything less than this response by the Biddeford police could reasonably be seen as dereliction of duty.

Similarly, contacts between the CEO and Mr. Holland were generated by third-party complaints from tenants or neighbors concerning Mr. Holland. On at least two

occasions, when disagreements arose between Mr. Holland and his tenants, utilities to the tenants' apartments were shut off. The tenants then called City authorities, who responded to these complaints. The evidence does not indicate that the CEO initiated these contacts on his own. Rather, the evidence indicates that the CEO responded to legitimate citizen complaints.

Further, the evidence does not support a finding that the City's elected and appointed leadership held or expressed a racially based animus toward Mr. Holland. The Chief of Police, the City Attorney and a City Counselor all testified that, while Mr. Holland regularly attended council meetings and was a frequent topic of discussion, none of this discussion involved or was motivated by considerations of race. While admittedly the court would not expect public officials to admit they were racist, nevertheless, Mr. Holland has the burden of proof on this issue, and that burden has not been carried.

Mr. Holland is an imposing figure, both physically and intellectually. Understandably, given the history of race relations in our country, he jealously guards his rights and is neither shy nor subtle about asserting them or questioning public authorities. While he has every right to do so, the evidence shows that his actions have created tensions within the community and generated complaints to public officials, whose duty it is to respond.

This would be a different case if the evidence showed that City officials, on their own initiative, sought out Mr. Holland for enforcement action. However, the evidence is to the contrary. Nearly every contact between City officials and Mr. Holland is the result of a third-party complaint. Given the tensions existing between Mr. Holland and members of the community, it is understandable that he would have numerous contacts

with city officials. However, that alone is not sufficient to prove that City officials acted out of racial animus toward him.

The entry will be as follows:

On Plaintiff's Complaint, judgment for the Defendant on all counts.

Dated:       September 6, 2006

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
STEPHEN WHITING ESQ
THE WHITING LAW FIRM
75 PEARL ST
PORTLAND ME   04101-4101


CITY OF BIDDEFORD:

MICHAEL SAUCIER ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME   04112-4630

KEITH R JACQUES ESQ
SMITH ELLIOTT SMITH & GARMEY
PO BOX 1179
SACO ME   04072